**PECK, Plaintiff-Appellant, v WILLIAMS, Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6908.    Decided March 1, 1948.

450

**OPINION**

By ROSS, J.:

This is an appeal on questions of law and fact.

In her amended petition the plaintiff states, in her first cause of action, that she incorporates in such amended petition an exhibit attached to her original petition, that it is a true copy of an instrument in existence, signed by plaintiff and defendant, that such instrument is void for uncertainty, that it does not constitute a contract, that defendant claims it is a binding contract, that it constitutes a cloud on the title to plaintiff's real estate described and referred to in the instrument, and "it affects her financial rights and obligations."

In her second cause of action, plaintiff incorporates by reference the allegations of her first cause of action and further states, that she is 65 years of age, a widow for the past ten years, and is unfamiliar with "complicated legal matters." The plaintiff then proceeds to relate facts tending to show that she was overpersuaded by defendant, her husband, and plaintiff's daughter into signing such contract, that she was unfamiliar with its terms, because she did not have reading glasses with her and plaintiff's daughter and defendant talked in loud voices during a purported reading of the instrument by defendant's husband. Plaintiff further alleges that if she is bound by the terms of such instrument, she will be required to spend "unknown but large sums of money under the exclusive agency and control of the defendant who would employ an architect and contractors to erect a building for which plaintiff would have to pay, the only discretion left to plaintiff being approval of plans" and that "after such building would be built plaintiff under the alleged contract would be bound to give defendant a ten year lease in a store and on a five room apartment in the building for a rental of $1200.00 a year, which under present building costs and in that business neighborhood no matter how cheaply the building was put up would be grossly inadequate," that the interests of plaintiff and defendant would be in conflict in such undertaking, that in addition to such provisions plaintiff is required to lease the premises now occupied by defendant for an un-

known and indefinite period at the existing rental of $50.00 per month and plaintiff is thus prevented from selling such premises or occupying same and plaintiff cannot improve such business site and that there is no consideration to support such alleged contract.

The plaintiff prays for a declaratory judgment holding the alleged contract void and "in the alternative" that the court find plaintiff signed the instrument under undue influence, duress, and fraud, and that the contract should be surrendered and cancelled, and for all other and proper relief."

Referring to the exhibit attached to the original petition and incorporated by reference in the amended petition, after describing certain real estate, it is provided:

"WHEREAS the said Antonia K. Peck is desirous of having a building containing two stores and apartments constructed on the above described premises, and

"WHEREAS said Antonia K. Peck is a resident of Springfield, Ohio and desires to have a resident of Cincinnati, Ohio to act as her agent during the progress of the construction of said building on the said above described premises, and

"WHEREAS the said Antonia K. Peck is desirous of leasing the store and the five room apartment immediately above the store located at the north end of said proposed building being the store and apartment adjoining the Roselawn Theatre.

"NOW THEREFORE in consideration of $1.00 and other good and valuable consideration, receipt of which is hereby acknowledged, the said Antonia K. Peck agrees with Evalyn Williams that the said Evalyn Williams shall be and she is hereby appointed the agent of Antonia K. Peck to represent the said Antonia K. Peck in the handling of all matters pertaining to the erection of said building according to the plans approved and accepted by the said Antonia K. Peck.

"It is further agreed between the said Antonia K. Peck and Evalyn Williams that the said Antonia K. Peck in consideration of the services rendered to the said Antonia K. Peck and other good and valuable consideration that the said Antonia K. Peck at the time of the completion and acceptance of said building to be erected on the premises herein described by the said Antonia K. Peck, she shall execute a lease to the said Evalyn Williams for the storeroom and five room apartment immediately above said storeroom located in the north end of the said building, adjoining the Roselawn Theatre for a period of ten (10) years at a rental of $1200.00 per year payable in monthly installments of $100.00 per month.

"It is further agreed between the said Antonia K. Peck, who is the owner of the premises at 1508 Miramar Court now occupied by the said Evalyn Williams, that the said Evalyn Williams shall have the right to occupy the said Miramar Court property on the same terms as at the present time until the lease herein referred to is executed and the said Evalyn Williams has possession of the five room apartment located in the building to be constructed on the premises herein described.

"That said Evalyn Williams accepts the appointment as agent of said Antonia K. Peck and agrees to handle the details and look after the interest of Antonia K. Peck during the erection and construction of the building on the premises herein above set out and as hereinbefore stated, without any compensation being paid her for her services.

"Evalyn Williams agrees to accept the lease as above herein referred to and to vacate the premises known as 1508 Miramar Court, Hamilton County, Ohio when the building is completed and fully erected on the premises hereinabove described and the five room apartment located above the store on the north side of said building is in a tenantable condition.

"This agreement is binding upon and inures to the benefit of the heirs, executors, administrators and assigns of the parties hereto.

"IN WITNESS WHEREOF the parties hereto have hereunto set their hands to duplicates hereof on the day and year last above written.

WITNESS:                          MRS. ANTONIA PECK
ANTONIA PECK
HOWARD WILLIAMS                   MRS. EVALYN WILLIAMS."

This instrument, it appears from the evidence, was drawn by the defendant's husband, who is an attorney-at-law. The plaintiff was not represented by counsel, nor did she receive the advice of any attorney until long after the execution of the instrument.

Without in detail setting out the various circumstances, it clearly appears that at the time this instrument was executed the plaintiff and defendant were friends, that plaintiff was induced to and did place the greatest trust and confidence in the defendant and her husband, and that he had previously represented the plaintiff in certain legal matters. It further appears from the evidence that the daughter of

plaintiff, who was present at its execution and signed it as a witness, was even more friendly with the defendant and that after friendly relations between plaintiff and defendant ended, this daughter continued such friendly relations and left her mother, going to live with a relative by marriage of defendant. It further appears that this same daughter exerted herself to the utmost in causing her mother to enter into the agreement. The evidence clearly develops a situation in which the plaintiff was caused to and was justified in relying upon the utmost good faith of defendant.

The evidence also clearly develops that the value of the premises which plaintiff agreed to lease the defendant in the building to be constructed and paid for by plaintiff would be far greater than the value upon which a $1200.00 annual rental would be predicated.

Turning to the contract, it is apparent that in certain respects the charge of indefiniteness and uncertainty is fully justified.

The plaintiff is obligated to erect a building regardless of any eventuality. She is so obligated, regardless of cost, building regulations, or zoning requirements. She is bound to rent a portion of the premises to the defendant at a fixed sum, even though such sum would be wholly inadequate to meet the proportionate cost of upkeep and expense.

It is true the plaintiff is given the right to approve the plans and specifications when and if they are submitted. There is nothing in the contract or the evidence to indicate that the defendant is obligated to do anything to expedite the proposed undertaking and the inference is that she would be perfectly content to contemplate indefinite delay in such accomplishment in view of the fact she is guaranteed by the terms of the contract occupancy of her present residence rented from plaintiff at $50.00 per month. The plaintiff's only escape from a life time obligation, yes, even an obligation to the "heirs, executors, administrators, and assigns" of the defendant is to erect a building in which she gives the defendant a store and apartment at the rate of $1200.00 per year.

There is nothing in the evidence to indicate that the defendant had any greater ability to supervise the erection of a store and apartment building than any other individual. It appears from the evidence that an architect was to be employed. Just what defendant, as plaintiff's agent was supposed to do is left to conjecture. The language of the contract is she is hereby appointed the agent to represent the plaintiff

"in the handling of all matters pertaining to the erection of said building, according to the plans approved and accepted" by the plaintiff. The defendant could employ an architect without any limit as to his compensattion and the plans presented by him could involve almost unlimited expenditure by the plaintiff. There is no limit as to how many such plans could be presented. The employment of the architect could be extended indefinitely. It is also apparent that under the wide scope of the defendant's employment as agent of plaintiff she could always be sure that plans and specifications would only be presented plaintiff insuring quarters in the proposed store and apartment building more than adequate considering defendant's obligation to pay $1200.00 yearly for same.

A reading of this agreement, considering the circumstances of the parties suggests that the only certain eventuality is that the defendant may remain in her present occupancy of premises belonging to plaintiff at least for the rest of her life, and that the plaintiff is prohibited from any use of either property, the store and apartment site and the residence occupied by defendant as long as the contract which defendant has caused to be recorded is in existence.

It is significant in the instant case that although the husband of defendant occupied the premises as tenant of plaintiff, and was an attorney, having served plaintiff in his professional capacity, and was more capable of rendering the services in connection with the construction of the proposed building than the defendant, that she rather than he is selected as agent, and she rather than he is assured occupancy thereof for an indefinite period.

In Pomeroy's Equity Jurisprudence, 5th Edition, Vol. 3, section 951, pages 776 and 777, it is stated:

"Where there is no coercion amounting to duress, but a transaction is the result of a moral, social, or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction, on the ground of undue influence, even though there may be no invalidity at law. (As stated by the American Law Institute,

" 'Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable.'

"It is immaterial, on the question whether a court of equity will set aside a gift, grant or bequest for undue in-

fluence in its procurement, whether the influence was exercised by the beneficiary or another."

Certainly, the plaintiff had the right to assume that the defendant would not act in a manner inconsistent with the plaintiff's welfare. The evidence contains not the slightest suggestion that the plaintiff was advised that she was putting a limitation on her right of disposition of her property, that the instrument she signed would be recorded and thus become a cloud upon the title of each piece of real estate, that the plaintiff and her husband could remain in her property for an indefinite period, even for life, if the plaintiff did not erect the store and apartment building. Can it be conceived if the plaintiff had been so advised, by these friends and confidants, in whom she had a full right to trust for advice and counsel, of the nature of the act they requested, yes, urged her to perform in executing this contract, that even she, inexperienced as she was in business matters would have jeopardized her control over her real estate, by an indeterminate, indefinite, ambiguous obligation to this defendant?

The evidence shows that the plaintiff having had previous professional dealings with the husband of defendant, came to defendant for advice and counsel. The evidence shows that the defendant and her husband went to the home of plaintiff, and ably assisted by plaintiff's daughter, urged her to sign this instrument, assuring her of their continued interest in her welfare.

It is true that equity will not extend relief by cancellation of an instrument merely because the action of the signer is improvident, or that the consideration is inadequate, or that the party is induced by persuasion to sign, but, certainly, where it appears that a confidant, in whom the signer has a right to rely for guidance and advice, and in whom she has safely placed her trust in the past, urges her to sign an instrument which entails radically unequal obligation against such signer's interest, and is indefinite and ambiguous, in specifying the obligation of the party securing such signature, and the signer is not acquainted with the legal effect of her acts, while the other contractor is guided by the advice of her husband, an attorney-at-law, that a just cause is presented for equitable intervention.

Counsel for defendant in their brief quote a letter written by plaintiff to defendant. This letter is as follows:

"Mrs. Williams:

I will drop you a few lines asking you if you could find out weather you could move in the upstairs if I build they

claim here you couldn't because you are no G. I. there was a family here that build a house for himself but they told him he has to sell his house to a G. I. I wouldn't like to have enny trouble like that you see Mrs. Williams I cant haul my girls enny more to work since I was sick my left hand 3 fingers feals stiff and dead its hard on me and I thought if I put up a smaller building so you could live upstairs it would be fine and save me lots of worry you find out for me please your water bill I didnt get for this month they send me a notice and I didn't pay it I ans them back and tell them I couldn't pay no bills if I didn't get them Mrs. Williams how about you take it over and take it off the rent then send me a receit for it. well I will close for now let me hear from you soon.

From your Friend Mrs. Antonia Peck
R. D. 5 So Burnett Rd, Springfield, Ohio."

This letter with others of plaintiff in evidence when compared with the contract drawn by defendant's husband indicates clearly the disparity in advantage between the parties. It is apparent from the evidence that the plaintiff was inexperienced and greatly limited in any ability to cope with the problems presented.

Again, in the brief of counsel for defendant, it is stated:

"It is not the intention of the parties hereto to authorize Mrs. Williams to build a building. The contract was to provide Mrs. Peck, a resident of Springfield, Ohio, with a personal representative in Cincinnati, Ohio, who would and could consult with a Cincinnati architect for the purpose of having plans prepared for a building suitable for Mrs. Peck's lot and for the purpose of submitting the plans to Mrs. Peck for her approval or rejection."

If this is true, then the consideration moving to plaintiff was more inadequate, indefinite, and ambiguous than would be inferred from the use of the words in the contract appointing defendant plaintiff's agent to represent Plaintiff "in the handling of all matters pertaining to the erection of said building."

This merely reinforces the conclusion that such language is indefinite and ambiguous in defining the obligation of the defendant.

No issue can be taken with authorities cited by defendant, for they cover the power of courts of equity in specific situations. Each case involves different facts. It is apparent that

in certain cases equity will extend relief. This is such a case.

The claim of ratification by acceptance of rent from the defendant cannot be urged successfully against the right of plaintiff to relief.

The plaintiff did not exercise her prerogative of cancelling the contract by her own acts,.She is seeking that relief now from this Court. Acceptance of the rent is not inconsistent with the position she now takes before this Court. As long as the defendant remains in her property she is entitled to rent therefrom.

It is the conclusion of this Court that the instrument involved should be cancelled and surrendered to plaintiff and a decree quieting the title of plaintiff to the premises described in the petition should be entered and a decree so providing may be presented accordingly.

ROSS and HILDEBRANT, JJ, concur in syllabus, opinion and judgment.

MATTHEWS, PJ.:

In my opinion, the instrument which the plaintiff seeks to have cancelled and the recording of which clouds her title is too indefinite to constitute a binding contract and that relief should be granted the plaintiff on that ground.