**In re MILLER & NEILL COMPANY, aka Miller & Neill Construction Company, Debtor.**

**MILLER & NEILL COMPANY, aka Miller & Neill Construction Company, Plaintiff,**

v.

**Paul E. BAUDERS, et al., Defendants.**

**Bankruptcy No. 81–01708.
Adv. No. 82–1084.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

June 27, 1984.

James M. Perlman, Toledo, Ohio, for plaintiff.

Thomas J. Schank, Toledo, Ohio, for defendants.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon plaintiff's complaint to compel turnover of property and for judgment and upon defendants' motions to file an amended answer and to reopen the case to accept additional evidence. Upon consideration of the pleadings, the record of this case, and the stipulations and memoranda submitted by the parties, the Court will grant judgment for plaintiff. Defendants' motions are denied.

### FACTUAL BACKGROUND

The parties have submitted the following stipulation of the facts and issues underlying this controversy:

1. Plaintiffs, as lessors, and defendants, as lessees, entered into a written lease dated May 6, 1977.

2. Said lease is for the premises known as The Drive 'N Pick Drive-thru Carryout, 1600 Port Clinton Road, Fremont, Ohio 43420.

3. Lessees have been paying a monthly rent of $782.41.

4. The lease was for five years with five year renewal options.

5. Paragraph 5 of the lease requires the lessees to notify lessors of their intent to renew for a second five year period. Lessees have properly notified lessors of their intent to renew.

6. Paragraph 6 of the lease requires lessors to provide lessees with new rental figures for the five year renewal period. Lessors properly notified lessees of the new rental amount.

7. Paragraph 6 of the lease is a formula for determining the new rent. Lessors have given lessees notice that the new rent according to the formula is to be $1,187.93.

8. Lessees do not dispute that lessors have correctly applied the formula and that the formula does in fact give the figure $1,187.93.

9. Paragraph 9b of the lease provides that 'any controversy ... shall be settled by arbitration.'

10. Lessees have given lessors proper notice of their request for arbitration of the rental terms.

11. Lessees continue to pay $782.41 and have refused to pay $1,187.93.

12. Lessors filed a Complaint for Turnover under Bankruptcy Code Section 542 because lessees have failed to pay the new rental figure.

13. This Court has jurisdiction pursuant to 28 U.S.C. Section 1471 and 11 U.S.C. Section 542.

14a. The issue presented by lessees is as follows: Do the lessees have the right to arbitration of the rental terms under the lease, thus delaying any turnover/eviction action until said arbitration is complete?

b. The issue presented by lessors is as follows: Have the lessees violated terms of their lease, entitling the lessors to turnover of the property and eviction of the lessees?

## DISCUSSION

The central issue raised in the stipulation submitted by the parties on February 22, 1983 is the question of the necessity of plaintiff and defendants engaging in binding arbitration to resolve any controversy arising under the terms of their lease agreement or whether, alternatively, an action for breach of contract under the terms of the lease may be maintained in a court of law. More specifically, the question is whether plaintiff can enforce a provision in the lease agreement calling for an increase in the amount of rental due according to a predetermined formula upon defendants' exercise of their option to renew the lease agreement or whether, notwithstanding defendants' admission that the formula was correctly applied and the increase duly calculated in accordance with the formula, the amount of rental due should be subject to arbitration.

In *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), the court was called upon to resolve a controversy between the trustee in bankruptcy of the Ludwig Honnold Manufacturing Company (Ludwig Honnold) and Continental Airlines, Inc. (Continental) relating to the propriety of Continental's applying a liquidated damages clause upon debtor's failure to comply with certain delivery terms in a supply contract between debtor and Continental. The trustee initiated adversary proceedings against Continental in bankruptcy court alleging that Continental's claim to the liquidated damages was improper. Continental applied for a stay of the proceeding under the Arbitration Act, 9 U.S.C. § 3, seeking to enforce a contractual provision between Ludwig Honnold and Continental requiring submission of any dispute between the parties to binding arbitration. Recognizing the necessity for resolving the competing federal policies between the Arbitration Act and the Bankruptcy Reform Act of 1978, the court held as follows:

In the instant case, ... the competing policies, both representing important con-

gressional concerns, are not easily reconcilable. They are both equally specific and focused and in giving a preference for either, the effectiveness of the other will be proportionally diluted. Bankruptcy proceedings, however, have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction. *See* 28 U.S.C. § 1334. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court. (footnote omitted) 712 F.2d at 59–60. Concurring with the rationale of *Zimmerman, supra,* this Court holds that the arbitration clause in the contract between the parties in the case *sub judice* is not binding. Furthermore, considering the need for a prompt resolution of the issues involved herein to this debtor in possession under Chapter 11 of the Code, the Court finds that defendants' application for stay of this proceeding should be denied. Accordingly, the Court will proceed to resolve the issues raised in the present proceeding.

■ The only real issue raised by way of defense to plaintiff's complaint, pursuant to the stipulation, is the propriety of utilizing the contractual formula for computing any increase in the rental due plaintiff upon defendants' exercise of their right of renewal under the lease agreement. As stated earlier, defendants do not contest that the formula was duly and correctly applied but instead argue that, considering "present economic conditions", the formula

is unfair. Plaintiff contends that there being no evidence of any coercion, fraud, or duress, the duly executed lease agreement, including the formula for computing rental increase, should be enforceable. The Court agrees with the latter contention.

At this point it becomes necessary to consider defendants' motions to amend their answer and to reopen the case to consider additional evidence. Essentially, defendants seek to raise by way of affirmative defense their contentions that the formula used for computation of the rental increase in unfair or "unconscionable" and also seek to assert by way of defense plaintiff's alleged breach of certain terms of the rental agreement. While the "unfairness" of the proposed rental increase and plaintiff's alleged breach were at least inferentially raised in the initial pleadings in this matter, these issues were seemingly waived by virtue of the parties' stipulation of facts and issues filed February 22, 1983. The stipulation was virtually bereft of any facts upon which to decide the unconscionability and breach defenses, defendants seemingly content to rely upon the contractual provision calling for arbitration. Under the circumstances of the case, in the exercise of its sound discretion, the Court declines to permit amendment of the pleadings and reopening of the evidence.

This case was commenced by the filing of plaintiff's complaint on October 27, 1982. At a duly convened pretrial conference on January 24, 1983, the parties agreed that a trial in this matter was unnecessary but that the factual issues involved could be resolved by way of the parties submission of an agreed statement of facts. Accordingly, the parties were ordered to and subsequently did submit the stipulation in issue on February 22, 1983 and all trial briefs were in by March 14, 1983. By order entered January 16, 1984, the Court set this matter for oral argument on February 15, 1984. It was only then after the case was decisional for nearly 11 months that defendants filed their motions on February 15, 1984 to amend the pleadings and to reopen the evidence.

Defendants do not assert any mistake or inadvertence in failing to have previously raised the defenses asserted. Nor do defendants assert that there is any newly discovered evidence that could not have been discovered by due diligence from the initiation of these proceedings. Instead, their new defenses and the need for new evidence seem only to have become relevant since new counsel entered an appearance for defendants on February 14, 1984. Apparently, anticipating the weaknesses in defendants' case discussed *supra* on the issue of arbitration, defendants sought to shore up their case or delay an ultimate decision by flushing out defenses and arguments known to be extant but previously ignored. Under these circumstances, consideration of the issues involved should be barred due to possible undue delay, bad faith, or dilatory motive.

Moreover, permitting amendment and reopening would cause undue prejudice to plaintiff and create additional burdens on the Court's already crowded trial docket. Plaintiff, the debtor in possession under Chapter 11 of the Bankruptcy Code, in attempting to effectuate a plan of reorganization, could be seriously prejudiced by being deprived of the increased rental and/or possession of their property. The delay involved and expense incurred in further awaiting trial and ultimate decision in this case could thwart any attempt at a successful reorganization by debtor.

■ Finally, it does not appear that the defenses defendants wish to assert, if supported by adequate evidence, would be legally sufficient to excuse their payment of the increased rental. Defendants first argue that the increased rental called for pursuant to the contract is unfair or unconscionable since it is unreasonable compared to the prevailing rental for other properties existing in the area and that the formula for computing the increase likewise is inappropriate to the area. Courts, however, do not relieve a party competent to contract from an improvident agreement in the absence of fraud or bad faith. *Hogan v. Wright,* 356 F.2d 595, 598 (6th Cir.1966).

There is nothing in defendants' proffer of evidence to show that the present agreement was anything but an arms length transaction free from any type of fraud or misrepresentation. Under such circumstances, notwithstanding the hardship to one party, the Ohio courts have uniformly upheld the validity and enforceability of such agreements. *E.g., Blount v. Smith,* 12 Ohio St.2d 41, 231 N.E.2d 301 (1967); *Gugle v. Loeser,* 143 Ohio St. 362, 55 N.E.2d 580 (1944); *Peck v. Williams,* 82 Ohio App. 35, 79 N.E.2d 562 (1962); *Lake Hiawatha Park Ass'n v. Knox County Agricultural Soc'y,* 28 Ohio App. 289, 162 N.E. 653 (1927).

■ Similarly, defendants allege that plaintiff has violated various and sundry provisions of their lease agreement such as a failure to make repairs or construct an addition to the premises. Again, however, even if proven, it does not appear that such breaches would excuse defendants' obligation to pay rent. First, there is nothing in the lease agreement that would indicate that plaintiff's performance of promises on its part was a condition precedent to defendants' obligation to pay rent. It thus appears that the parties contract did not contain mutual and dependent provisions to be performed simultaneously but that they were independent provisions such that, even though one party has not performed a promise or promises made by him, the other party is liable for a breach. *See generally,* 33 O.Jur.2d Landlord and Tenant § 24. In particular, with regard to plaintiff's obligation to make repairs, "the general rule is that breach of such agreement does not excuse prepayment of rent so long as the tenant remains in possession, because the covenants to repair and to pay rent are usually considered independent ....." 33A.O.Jur.2d Landlord and Tenant § 362 at 265–266 (footnote omitted). Defendants have submitted no authority that would support a different view.

The general rule is that stipulations entered into freely and fairly are not to be set aside except to avoid manifest injustice. *Fairway Constr. Co. v. Allstate Modern-*

**594**

*ization, Inc.,* 495 F.2d 1077, 1079 (6th Cir. 1974). In light of the foregoing discussion, in the opinion of this Court, it would not appear to be a manifest injustice to deny defendants' motions to amend their pleadings and reopen the evidence.

The Court having resolved all the issues in this matter in favor of plaintiff, it appears that it should be restored to possession of its property and that defendants should pay all accumulated arrearages for past due rent under the contract. The difference between the existing rental being paid ($782.41) and that due under the increase computed according the contract ($1,189.73) being $407.32 per month, the increase having remained unpaid since the effective date of the renewal of the lease agreement, June 24, 1982, defendants are liable for 24 months of arrearages or $9,775.68. It is therefore,

ORDERED that defendants' motions to file an amended answer and to reopen the case to accept additional evidence be and hereby are denied. It is further,

ORDERED, ADJUDGED, AND DECREED that defendants turn over possession of plaintiff's premises at 1600 Port Clinton Road, Fremont, Ohio forthwith. It is further,

ORDERED, ADJUDGED, AND DECREED that plaintiff Miller & Neill Company have judgment against defendants Paul Bauders and Margaret L. Bauders in the amount of $9,775.68 for all rental arrearages to date.