**In re DOUBLE TRL, INC., Double TRL, Inc., d/b/a Autovest, Double TRL, Inc., d/b/a South Shore Automotive Center and Double TRL, Inc., d/b/a Rustguard, Debtor.**

**DOUBLE TRL, INC., Plaintiff,**

**v.**

**F.S. LEASING, INC., Sound Move Leasing, Inc., Auto Strada, Ltd., Sound Move Datsun, Inc., Sound Move Auto Plaza, Inc., Frank Scappatura, Defendants.**

**Bankruptcy No. 185–51830–353. Adv. No. 186–0042.**

United States Bankruptcy Court, E.D. New York.

Oct. 22, 1986.

---

Alan M. Dubow, Epstein Reiss & Goodman, New York City, for debtor.

Noel W. Hauser, Hass, Greenstein, Hauser, Sims, Cohen & Gerstein, P.C., New York City, for defendants.

Gary R. Greenman, Kissam & Halpin, New York City, for Creditors' Committee.

JEROME FELLER, Bankruptcy Judge.

Before this Court are motions filed by Defendants seeking the following:

(1) stay or dismissal of Adversary Proceeding No. 186–0042 pending arbitration of the underlying disputes and;

(2) dismissal of Adversary Proceeding No. 186–0042 for lack of jurisdiction or, in the alternative, abstention by this Court.

After reviewing the motion papers, pleadings, briefs of the parties, transcript of the July 30, 1986 hearing on the motions, other relevant papers filed in the Chapter 11 case, applicable law, and for the reasons hereinafter set forth, Defendants' motions are in all respects denied.

## I. *Background*

Double TRL, Inc. (hereinafter "Debtor", "Plaintiff", or "Double TRL") is an automobile leasing company which filed a voluntary petition under Chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), 11 U.S.C. § 1101, et seq., on November 6, 1985. The various entities named as defendants in the subject litigation (Adversary Proceeding No. 186–0042) either are or were also engaged in the business of automobile leasing and are all owned, operated and/or controlled by defendant Frank Scappatura (hereinafter collectively referred to as the "Strada Group" or "Defendants").

The Chapter 11 case has been marked from virtually its outset by litigation instituted by the Debtor, bitterly contested by Defendants, arising from the Debtor's entry into the automobile leasing business in or around the period of February-April 1984, and legal maneuverings by the parties to such litigation far too numerous to recount in great detail. The facts surrounding Debtor's entry into the automobile leasing business are fuzzy at best and can be aptly summarized as a mystery enshrouded in an enigma, even to the extent that Defendants assert that some of the entities comprising the Strada Group have no legal existence. Fortunately, the precise facts are not relevant to resolution of the motions now before this Court. Suffice it to say that from the very beginning, around 2½ years ago, rancor and feuding was the name of the game between the Debtor, Defendants, Apple Bank for Savings ("Apple Bank")—the principal institution financing the purchase of the automobiles ultimately leased, and a company known as ESP Leasing Inc. ("ESP").

A brief overview of the known facts, litigation in the bankruptcy court and related maneuverings, is necessary to place Defendants' motions in proper perspective and to facilitate comprehension of their resolution. The genesis of the disputes begin with ESP, a company that was engaged in the business of automobile leasing under the trademark "Autovest". ESP experienced financial difficulties in 1983 and on December 26, 1983 signed a conditional agreement with Defendants, in effect, selling its automobile leasing business to Defendants. Under the agreement Defendants were to have acquired all of ESP's assets subject to its liabilities, but retained the option to terminate the agreement within 120 days. Defendants exercised the termination option. However, in or around the February-April 1984 time span, discussions or negotiations ensued between Debtor and Defendants, materializing in understandings or agreements whereby Double TRL was to step into the shoes of Defendants under the December 1983 agreement and acquire ESP's assets subject to its liabilities. Feuding quickly developed between and among Double TRL, Defendants, Apple Bank and ESP. Insofar as here relevant, the gravamen of Double TRL's dispute with Defendants were assertions that while it was straddled with ESP's liabilities, Defendants failed to turn over ESP's assets.

The matter was settled, probably with the assistance of Apple Bank and ESP, when Double TRL and Defendants for the first time entered into a written agreement on August 24, 1984. That agreement provided for, among other things, the assignment to Double TRL of three Autovest leases formerly owned by ESP, the transfer of certain other assets formerly owned by ESP and in possession of Defendants and the assumption of certain liabilities by Double TRL. Also part of the August 1984 agreement was a provision for all outstanding claims between the parties to be submitted to an arbitration committee consisting of Jerome McDougal, President of Apple Bank and Richard Fitzgerald, President of Yagen Associates. Apple Bank is a creditor of the Debtor and Yagen Associates was or is one of the largest creditors of ESP and may well be a creditor of the Debtor as well. Notwithstanding the August 1984 agreement, the feuding continued apparently unabated, spilling over into the Chapter 11 case. According to Double TRL, it was its inability to obtain all the ESP assets to which entitlement is

claimed that was a major cause for the Chapter 11 filing.

The first skirmish in the Chapter 11 case was an adversary proceeding instituted by the Debtor against Apple Bank, Apple Bank's officers and directors, the Strada Group and Frank Scappatura (Adversary Proceeding No. 185–0202—(hereinafter "Adversary Proceeding No. 1"). The complaint, dated November 27, 1985, contains fifteen (15) causes of action sounding in breach of contract, fraud, misrepresentation and conspiracy, including violations of the RICO statute (Racketeer Influenced and Corrupt Organizations—18 U.S.C. § 1961, et seq.). Many millions were sought in damages and Debtor requested a trial by jury.

The Debtor was able to settle its differences with the Apple Bank defendants in Adversary Proceeding No. 1 and entered an agreement, dated February 5, 1986, with the subjoined consent of the Creditors' Committee settling the litigation between them. Thereafter, on April 28, 1986, a stipulation discontinuing Adversary Proceeding No. 1 and severing the action against the Apple Bank defendants was "so ordered" by the Court, with the litigation continuing as against the Strada Group and Mr. Scappatura. Meanwhile, Debtor's counsel began to doubt the propriety of bringing Adversary Proceeding No. 1 in the bankruptcy court in light of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, July 10, 1984, 98 stat 333 ("BAFJA"), probably, in large part, due to the Court raising *sua sponte* the issue at a pre-trial conference in that lawsuit.

The Debtor withdrew its request for a jury trial in Adversary Proceeding No. 1 and, while continuing said lawsuit against the Strada Group and Mr. Scappatura, commenced another lawsuit against the Strada Group and Mr. Scappatura with the filing of a second complaint, this one dated April 1, 1986 (Adversary Proceeding No. 2). This latter lawsuit is the target of Defend-ants' dismissal and/or abstention motions. The complaint in Adversary Proceeding No. 2 seeks a turnover and an accounting under 11 U.S.C. § 542 of specifically designated property which the Debtor claims was supposed to have been turned over pursuant to agreements with the Defendants.[1] Defendants filed an answer, dated May 9, 1986, containing various affirmative defenses, including the Statute of Frauds, and a counterclaim praying for an order directing Plaintiff to perform its obligations under the agreements, including reimbursement to Defendants of monies expended and indemnification for obligations assumed in connection therewith.

The motions of Defendants seeking dismissal and/or abstention came on for hearing on July 30, 1986 in connection with both Adversary Proceeding No. 1 and 2. At the hearing, Debtor's counsel announced the complete withdrawal of Adversary Proceeding No. 1 and an order, dated July 30, 1986, was signed by the Court dismissing the action as against the Strada Group and Mr. Scappatura. Thus, as indicated above, the pending motions pertain only to Adversary Proceeding No. 2. At the conclusion of the July 30 hearing, the motions were taken under advisement and the Court directed the parties to proceed with discovery. Defendants took an appeal to the District Court of this Court's directive to proceed with discovery, pending its ruling on Defendants' motions, which appeal was dismissed from the bench by the Honorable Charles P. Sifton, U.S.D.J., on August 14, 1986.

II. *Motion to Stay or Dismiss Adversary Proceeding No. 2 and to Compel Arbitration of Underlying Disputes*

Citing the United States Arbitration Act ("Arbitration Act"), 9 U.S.C. § 1, et seq., Defendants contend that this Court is required to stay Plaintiff's turnover proceeding and, in effect, to compel arbitration under the August 24, 1984 agreement between the parties. It is Defendants' position that the Arbitration Act, specifically 9

---

**1.** The complaint in Adversary Proceeding No. 2 also requests a jury trial, which request, like the request for a jury trial in Adversary Proceeding No. 1 was subsequently withdrawn.

U.S.C. § 3, mandates that where litigation is commenced asserting a claim or claims arising out of an agreement which calls for arbitration of disputes, the action shall be stayed until such time as arbitration has been had in accordance with the agreement, providing the applicant is not in default in proceeding with the arbitration.[2] Debtor disagrees sharply, arguing that the Bankruptcy Code modifies the Arbitration Act and that this Court may and should exercise its discretion in favor of judicial resolution of the disputes between the parties. In addition, Debtor contends that the Defendants are in default in proceeding with arbitration, and therefore, have waived the right to do so. We agree with the Debtor's first argument, obviating the need to address Debtor's second contention.

We start our analysis with the undeniable proposition that there exists a strong federal policy favoring arbitration of disputes falling within the purview of the Arbitration Act. *See, e.g., Dean Witter Reynolds Inc. v. A. Lamar Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Prima Paint Corporation v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2nd Cir.1968). Based upon this general premise, Defendants assert that this Court is divested of all discretion and must compel arbitration. Generalizations like this seldom provide satisfactory solutions to specific and serious problems, i.e., reconciliation of conflicting policies underlying the Arbitration Act and the Bankruptcy Code.[3] The policies underlying the Arbitration Act are enforcement of contractual arrangements and, as an alternative dispute resolution technique, the removal of contested

issues from the arena of prolonged, expensive litigation in the courts. On the other hand, the Bankruptcy Code is bottomed on policies involving the centralization of dispute resolution in the judicial forum so as to afford protection and administration of an estate for the benefit of a debtor and its creditors, the latter consisting of a category of persons who were never parties to pre-bankruptcy contractual arbitration agreements. Defendants cite no authority for their absolutist position that a court has no discretion and must enforce the Arbitration Act in the context of a bankruptcy case and our independent research has failed to uncover any such authorities. Indeed, as shown below, the authorities are uniformly to the contrary.

Under the former Bankruptcy Act, it was well established that the enforcement of arbitration clauses in agreements was determined on a case by case basis in the exercise of the bankruptcy court's discretion. *See, e.g., Allegaert v. Perot,* 548 F.2d 432 (2d Cir.1977); *Johnson v. England,* 356 F.2d 44 (9th Cir.), *cert. denied,* 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966). As the Second Circuit observed, "[t]here must be judicial control over the exercise of the right to arbitrate just as there is over other rights and duties of the bankrupt." *Truck Drivers Local Union No. 807, International Brotherhood of Teamsters v. The Bohack Corporation,* 541 F.2d 312, 320 (2d Cir.1976), *on remand, The Bohack Corporation v. Truck Drivers Local Union No. 807, International Brotherhood of Teamsters,* 431 F.Supp. 646 (E.D.N.Y.), *aff'd,* 567 F.2d 237 (2d Cir.1977), *cert. denied,* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978). The law is no different under the Bankruptcy Code, enacted in 1978.

---

**2.** 9 U.S.C. § 3 reads as follows:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accord-

ance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

**3.** For a detailed discussion of the history of the Arbitration Act and its interplay with the federal bankruptcy laws, see, Pearson and Proctor, *Treatment of Contractual Arbitration Agreements under the 1978 Bankruptcy Code,* 1984 Ann.Surv.Bankr.L. 85–105.

■ If we assume, as it is proper to do, that Congress acts with the knowledge of existing law, *Cannon v. University of Chicago,* 441 U.S. 677, 697–98, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979), it follows that absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction. *Kansas City, Missouri v. Federal Pacific Electric Co.,* 310 F.2d 271, 275 (8th Cir.), *cert. denied,* 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962); *United States v. Professional Air Traffic Controllers Organization,* 653 F.2d 1134, 1138 (7th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981). This presumption is especially valid where, as in the present case, the legislative history underlying the new statute, the Bankruptcy Code, indicates the continuing force of the bankruptcy process even in the face of arbitration. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296 (automatic stay under 11 U.S.C. § 362 encompasses arbitration proceedings).

Recently the Third Circuit addressed the conflicting policies underlying the Arbitration Act and the Bankruptcy Code and held that the Bankruptcy Code impliedly modified the Arbitration Act. *Zimmerman v. Continental Airlines, Inc.* 712 F.2d 55, (3rd Cir.1983); *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984). The language of the Court, 712 F.2d at 59, is instructive:

"Bankruptcy proceedings ... have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction.... While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court." [Footnote Omitted].

To the same effect, *Miller & Neill Company v. Bauders (In re Miller & Neill Company),* 41 B.R. 589 (Bkrtcy.N.D. Ohio 1984); *Braniff Airways, Inc. v. United Air Lines Inc. (In re Braniff Airway, Inc.),* 33 B.R. 33 (Bkrtcy.N.D.Tex.1983). Indeed, in addition to the above cases, other reported cases under the Bankruptcy Code are all consistent in adherence to the position that the enforcement of contractual arbitration agreements is left to the sound discretion of the bankruptcy court. *Cuvrell v. Mazur (In re F & T Contractors, Inc.,* 649 F.2d 1229 (6th Cir.1981); *Coar v. Brown,* 29 B.R. 806 (N.D.Ill., 1983); *Brookhaven Textiles, Inc. v. Avondale Mills, Inc. (In re Brookhaven Textiles, Inc.),* 21 B.R. 204 (Bkrtcy.S.D.N.Y.1982); *Cross Electric Company, Inc. v. John Driggs Company, Inc. (In re Cross Electric Company, Inc.),* 9 B.R. 408 (Bkrtcy.W.D.Va.1981).

■ We turn now to the question as to whether or not this Court should exercise its discretion to stay or dismiss Adversary Proceeding No. 2 pending arbitration. Factors considered include i) the degree to which the nature and extent of the litigation and evidence makes the judicial forum preferable to arbitration; ii) the extent to which special expertise is necessary to resolve the disputes; and iii) the identity of the persons comprising the arbitration committee and their track record in resolving disputes between the parties.

■ The feuds underlying Adversary Proceeding No. 2 are long-standing and deep. Fair resolution dictates that a complete record be maintained and that findings and conclusions be made by a tribunal. It is undisputed that extensive discovery, both documentary and testimonial, is necessary to place the proceedings in a posture

ripe for adjudication.[4] There is no way these requirements for resolution of the litigation can be achieved through arbitration, clearly making the judicial forum preferable for dispute resolution in this case.

The issues to be resolved in Adversary Proceeding No. 2 do not require the special expertise which arbitrators might be able to bring to the decision-making process. There are no antitrust, ERISA, Workman's Compensation issues, or tax matters. Nor do we have labor disputes arising out of collective bargaining agreements. The issues relate to claims for turnover of property, defenses to such claims and counterclaims, all matters obviously within the ken of the Court.

Finally, the members of the arbitration committee, Messrs. Jerome McDougal and Richard Fitzgerald, are not disinterested persons and, in any event, have been unable to resolve the disputes between Double TRL and Defendants since at least August 1984. There is no reason to believe, assuming they were willing to try again, that they would be able to do so now.

For all of the foregoing reasons, we decline to stay or dismiss Adversary Proceeding No. 2, pending arbitration under to the August 24, 1984 agreement between Plaintiff and Defendants.

III. *Motion to Dismiss Adversary Proceeding No. 2 for Lack of Jurisdiction or, in the Alternative, Seeking Abstention*

Considerable time and effort have been expended by this Court in an attempt to make order out of the chaos engendered by the papers and arguments offered in connection with this motion. Defendants' moving papers and arguments in support thereof are marked by a lack of focus and an array of vague, confusing and inconsistent statements. They are oblivious to the federal bankruptcy jurisdiction reposed in the district court as distinguished from the permissible exercise of such jurisdiction by the bankruptcy court. They fail to appreciate the significance of the distinction between core proceedings and proceedings otherwise related to a bankruptcy case. And, they utterly confuse the difference between jurisdiction and abstention. Plaintiff's opposition is not significantly more illuminating. With this background in mind, we now turn to the jurisdiction and abstention issues *seriatim.*

A. *Jurisdiction*

■ In *Northern Pipeline Construction Co. v. Marathon Pipeline Construction Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court ruled that the breadth of jurisdiction accorded the bankruptcy court under former 28 U.S.C. § 1471 ran afoul of constitutional prohibitions. The Supreme Court held that the bankruptcy court could not constitutionally adjudicate the debtor's state law claims in that case because the jurisdiction given the bankruptcy courts under § 1471 was too broad since the bankruptcy judges, being Article I judges, lack protections of life tenure and unreducible compensation, which guarantees inhere to the offices of Article III district judges. To cure the constitutional infirmities, Congress revised in 1984, as part of BAFJA, the judicial code provisions applicable to bankruptcy practice contained in Title 28 of the United States Code.

Under the revised jurisdictional structure, all federal bankruptcy jurisdiction is placed in the district courts. The district courts have jurisdiction over all bankruptcy cases and to adjudicate proceedings therein. Such cases and proceedings may, however, be referred to the bankruptcy courts by the district courts. By way of summary, 28 U.S.C. § 1334 was amended to provide the district courts with jurisdiction of

---

4. At oral argument held on July 30, 1986, Defendants' counsel stressed that Defendants were seeking to enforce the arbitration clause to resolve the disputes quickly and to avoid a "morass of discovery." Hearing Transcript at 34, 58–61. Yet, cooperation regarding document production and other discovery requests has been almost nil. Given the conceded importance of discovery in this matter and the atmosphere of non-cooperation, the need for judicial control over the parties is self-evident.

"all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Pursuant to 28 U.S.C. § 157(a), the district courts are permitted to refer all such cases and proceedings to the bankruptcy judges of their districts.[5] The bankruptcy judges, "constitut[ing] a unit of the district court to be known as the bankruptcy court" [28 U.S.C. § 151], are empowered by 28 U.S.C. § 157(b)(1) to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." If the proceedings are core, as illustrated in § 157(b)(2), the bankruptcy judge can enter all appropriate orders and judgments subject to appellate review by the district court. When dealing with a non-core proceeding "that is otherwise related to a case under title 11," i.e., a *Marathon* type case, a bankruptcy judge may not make a final determination, but must submit proposed findings of fact and conclusions of law to the district court in accordance with the procedures delineated in § 157(c)(1). Determination of whether a proceeding is core is entrusted to the bankruptcy judge under § 157(b)(3).

Federal bankruptcy jurisdiction is broad under BAFJA. The continuation, as under former 28 U.S.C. § 1471, of the combination of the three bases for jurisdiction, including "related to" [6] jurisdiction leave no doubt as to the wide scope of federal jurisdiction over disputes in bankruptcy cases. *See,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445–46 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6400, 6401. Surely, Debtor's Adversary Proceeding No. 2 seeking a turnover of property pursuant to 11 U.S.C. § 542 under asserted agreements with Defendants is subsumed under the broad penumbra of federal jurisdiction conferred by 28 U.S.C. §§ 1334 and 157. Whether the bankruptcy court can hear and determine the matter, or hear and report to the district court for final disposition, is a separate question requiring resolution. In any event, that question implicates only the permissible extent of the bankruptcy court's jurisdiction. Accordingly, Defendants' motion to dismiss for lack of jurisdiction is denied.

The scope of the bankruptcy court's judicial power in Adversary Proceeding No. 2 is contingent upon a determination as to whether that action is a "core proceeding," or a non-core proceeding "otherwise related" to the title 11 case. 28 U.S.C. § 157(b)(2) enumerates a non-exclusive list of fifteen (15) core proceedings. Included in that list are "orders to turn over property of the estate." § 157(b)(2)(E).

Unlike Adversary Proceeding No. 1, a breach of contract, fraud, misrepresentation and RICO action seeking damages, Adversary Proceeding No. 2 is triggered by a provision of title 11, § 542, which section is styled "Turnover of property to the estate," and, as such, is *prima facie* a core proceeding. The complaint (paragraph 12) requests turnover of specifically identified property which the Debtor may use, sell or lease under 11 U.S.C. § 363 and an ac-

---

5. By Order dated August 28, 1986, the United States District Court for the Eastern District of New York (Honorable Jack B. Weinstein, Chief Judge) referred "any or all cases under Title 11, and any or all proceedings arising under Title 11, or arising in or related to a case under Title 11" to the bankruptcy judges of this district, effective *nunc pro tunc* as of July 10, 1984. This Order rescinded and replaced prior similar Orders referring bankruptcy cases and proceedings to the bankruptcy judges of this district. Similar referral orders have been adopted by the district courts throughout the country.

6. The "related to" test has been formulated by one appellate court as follows:

"The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* .... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 802 (3rd Cir.1985) (Quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984) [Emphasis In Original].

counting for such property.[7] 11 U.S.C. § 542(a). The complaint (paragraph 14) further requests turnover of specifically identified books, records and documents relating to the Debtor's claimed property or financial affairs. 11 U.S.C. § 542(e).

Defendants cites 11 U.S.C. § 542(b) in support of its contention that Adversary Proceeding No. 2 is not properly brought as a turnover action in that Defendants owe no debt to the Debtor which is "matured, payable on demand, or payable on order." Defendants apparently forget, however, that Adversary Proceeding No. 2 seeks turnover relief pursuant to subdivisions (a) and (e) and not subdivision (b) of § 542.

Defendants also argue that Adversary Proceeding No. 2 is an action to enforce specific performance of a contract governed by state law, and that therefore the bankruptcy court is not empowered to adjudicate the lawsuit. The argument is without merit. Bankruptcy courts are not limited to the application of the bankruptcy laws alone—they can and must apply state laws as they pertain to bankruptcy proceedings. This is not surprising. Property interests are created and defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); 4 *Collier on Bankruptcy* ¶ 541.02[1] at 541–10 to–11 (15th ed. 1985) ("the existence and nature of the debtor's interest in property ... are determined by nonbankruptcy law"). Indeed, Congress in the enactment of BAFJA specifically provided that, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). *See also, Harry C. Partridge, Jr. & Sons, Inc. v. M & R Construction Corp. (In re Harry C. Partridge, Jr. & Sons, Inc.),* 48

B.R. 1006, 1010 (Bkrtcy.S.D.N.Y.1985) ("That the contract in question involves a matter of construction which is controlled by state law does not detract from the fact that the essence of this action implicates a turnover proceeding which is expressly defined as a core proceeding."); *Danning v. Lummis (In re Tom Carter Enterprises, Incorporated),* 44 B.R. 605, 609 (D.C.D.Ca. 1984) ("Nor is the federal character of a core bankruptcy proceeding changed by the fact that the substantive rights being adjusted are often created by state law.").

Finally, Defendants appear to argue that because Plaintiff would have had to seek the relief sought in Adversary Proceeding No. 2 in the state courts if not for the bankruptcy filing, the bankruptcy court cannot hear and determine the lawsuit. The short answer to this contention is that the Plaintiff has validly pleaded causes of action specifically denominated as core proceedings arising under § 11 U.S.C. 542. This is no different than, for example, a fraudulent conveyance action filed by a debtor in a bankruptcy court, which action could have been brought in a state court under state fraudulent conveyance statutes in the absence of a bankruptcy filing. *See,* 11 U.S.C. § 548 and 28 U.S.C. § 157(b)(2)(H).

### B. *Abstention*

Principles of federalism intrinsic to our system of government give rise to the concept that a federal court, under appropriate circumstances, although possessing jurisdiction, may or should abstain in favor of state court adjudication. Abstention provisions relating to bankruptcy practice are contained in 28 U.S.C. § 1334(c)(1) [discretionary abstention] and 1334(c)(2) [mandatory abstention].[8]

---

**7.** Debtor's undated Supplemental Memorandum of Law In Opposition To Defendants' Motion To Dismiss (p. 8) refers to a damage computation. We attribute this to oversite, hopefully not deliberate, and not to an attempt to back door Adversary Proceeding No. 1.

**8.** 28 U.S.C. § 1334(c)(1) and (2) reads as follows:

"(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State

■ Parenthetically, at this juncture, we would be remiss in not pointing out that because 28 U.S.C. § 1334(c) refers to the abstention of the "district court", there is a question as to the power of the bankruptcy court to hear and determine abstention issues. Although the matter is not free from doubt,[9] it would seem most consistent with the overall BAFJA jurisdictional scheme and particularly 28 U.S.C. §§ 151 and 157, that the adjudication of abstention issues should be made by the bankruptcy judge in the first instance, subject to district court review. *Arnold Printworks, Inc. v. Apkin (In re Arnold Printworks, Inc.)*, 61 B.R. 520, 525 (D.Mass.1986); *Elegant Concepts, Ltd. v. Kristiansen (In re Elegant Concepts, Ltd.)*, 61 B.R. 723, 727–28 (Bkrtcy.E.D.N.Y.1986); *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co., Inc.*, 62 B.R. 873, 878 (Bkrtcy.S.D.N.Y.1986); *Marine Bank Appleton, N.A. v. Mill-Craft Building Systems, Inc. (In re Mill-Craft Building Systems, Inc.)*, 57 B.R. 531, 535 (Bkrtcy.E.D.Wis.1986); *General Instrument Corporation v. Financial and Business Services, Inc. (In re Finley)*, 62 B.R. 361, 364–66 (Bkrtcy.N.D.Ga.1986); *cf., In re Leonard*, 55 B.R. 106, 107–09 (Bkrtcy.D.C.1985).

■ Alternatively, Defendants urge the Court to abstain in Adversary Proceeding No. 2 pursuant to 28 U.S.C. § 1334(c)(1).[10] The Court may abstain under § 1334(c)(1) in the interest of justice, or in the interest of comity with state courts, or respect for state law. However, Defendants have failed to demonstrate that any of the bases for discretionary abstention are present in Adversary Proceeding No. 2.[11] The action implicates no important state interests or policies. *See, Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). It involves no unsettled questions of state law. *See, Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

Defendants' argument is simply that because Adversary Proceeding No. 2 involves state law claims, the Court should abstain. As indicated above, Adversary Proceeding No. 2 is a core proceeding. The existence of state law claims which are inextricably tied to traditional bankruptcy matters is not, without more, an appropriate basis for discretionary abstention. The bankruptcy court does not ordinarily surrender its jurisdiction except under exceptional circumstances. *Mangus v. Miller*, 317 U.S. 178, 186, 63 S.Ct. 183, 186, 87 L.Ed. 169 (1943). In the absence of exceptional circumstances, "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," must be carried out. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise...."

9. *See*, e.g., *Atlas Automation, Inc. v. Jensen, Inc. (In re Atlas Automation, Inc.)*, 42 B.R. 246, 249 (Bkrtcy.E.D.Mich.1984) (Bankruptcy court is authorized only to recommend abstention to the district court).

10. Defendants seem to concede that mandatory abstention is inapplicable to this proceeding. Hearing Transcript (July 30, 1986) at 48–49. In any event, the mandatory abstention provision, 28 U.S.C. § 1334(c)(2), is not applicable to Adversary Proceeding No. 2 for three (3) separate and distinct reasons, i) the action is a core proceeding arising under title 11, ii) the action is not one presently pending in state court between the parties, and iii) the absence of a showing that the action, even if it would be presently pending, could be timely adjudicated in a state forum.

11. *See, Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–816, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976) (Synopsis and examples of general abstention doctrine applicable in the federal courts).

## ORDER

Based on all of the foregoing, it is HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. Defendants' motion for a stay or dismissal of Adversary Proceeding No. 186–0042, pending arbitration of the disputes underlying that action, is denied.

2. Defendants' motion for dismissal of Adversary Proceeding No. 186–0042 for lack of jurisdiction, is denied.

3. Adversary Proceeding No. 186–0042 is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(E).

4. Defendants' motion for abstention in Adversary Proceeding No. 186–0042, is denied.

5. Plaintiff and Defendants are to prepare and submit an order containing a discovery schedule within twenty (20) days hereof.