In the Matter of RDM SPORTS GROUP, INC.; RDM Holdings, Inc.; Sports Group, Inc.; Diversified Products Corporation; Willow Hosiery Company, Inc.; Hutch Sports USA, Inc.; Diversified Trucking Corp.; International Sports and Fitness, Inc.; and T.Q., Inc., Debtors.

William G. Hays, Jr., as Liquidating Agent, f/k/a Chapter 11 Trustee, for RDM Sports Group, Inc. and Related Debtors, Plaintiff,

v.

Equitex, Inc.; Smith, Gambrell, Russell, L.L.P.; David J. Harris, P.C.; and David J. Harris, individually, Defendants.

Bankruptcy Nos. 97–12788–WHD to 97–12796–WHD.
Adversary No. 00–1065.

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

April 2, 2001.

See also 260 B.R. 915.

James C. Cifelli, Lamberth, Bonapfel, Cifelli & Stokes, Atlanta, GA, Leo R. Beus, Beus Gilbert PLLC, Phoenix, AZ, for Plaintiff.

Edward H. Krugman, Bondurant, Mixson & Elmore LLP, Atlanta, GA, for Equitex, Inc.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court is the "Motion to Dismiss or, in the Alternative, to Stay Proceedings in Favor of Arbitration" filed by Defendant Equitex, Inc. (hereinafter "Motion"). The Plaintiff in this adversary proceeding, William G. Hays, Jr., the Liquidating Agent for RDM Sports Group, Inc. and Related Debtors (hereinafter the Debtors are collectively referred to as "RDM"), opposes the Motion. The Court's

jurisdiction over this matter is limited to that provided in 28 U.S.C. § 157(c)(1).

## BACKGROUND

RDM filed a petition under Chapter 11 of the Bankruptcy Code on August 29, 1997. As of the petition date, Equitex, Inc. (hereinafter "Equitex") owned approximately 10 percent of RDM's common stock. (Compl. at ¶ 39). Henry Fong was a Director and the President of Equitex. (Id.). Mr. Fong was also RDM's Chief Executive Officer and member of the RDM Board of Directors. (Id. at ¶ 21).

On October 29, 1987, Equitex and RDM executed a "Consulting Agreement." Paragraph one of the Consulting Agreement provides as follows:

> Equitex agrees that it shall render nonfinancial related management and computer software programming services to the Company on a nonexclusive basis for a period of one year commencing as of the closing date of the Company's initial public offering. Equitex shall evaluate the Company's internal computer system and assist in the design, writing and modification of computer programs for use by the Company. Equitex also will advise and assist the Company in management development, corporate planning, accounting, sales and marketing, employee benefits, technology management, personnel recruiting and other areas of non-financial planning that may be required by the Company.

(Consulting Agreement at ¶ 1). A renewal of the Consulting Agreement was accomplished by an Addendum dated December 15, 1990. The Addendum contains the following language:

> the Consulting Agreement references that certain services shall be provided by Equitex, Inc. to [RDM] with respect to management and general financial matters including but not limited to, changes in capital structure, reviewing and analyzing financial resources to implement [RDM's] strategic growth, long range business planning and sales and marketing maters for [RDM]. . . .

(Addendum to Consulting Agreement).

On August 18, 2000, William G. Hays, Jr. (hereinafter the "Trustee")[1] filed a complaint against Equitex consisting of three causes of action: breach of contract (count one); breach of fiduciary duty (count two); and civil conspiracy/acting in concert with others (count three).[2] In addition, although not specifically designated as a "count," the Trustee has accused Equitex of "fraudulent concealment." (Compl. at ¶¶ 33—37). The gravamen of the complaint is that Equitex should be held liable for actual and punitive damages for its role in causing RDM's financial demise.

Through the instant Motion, Equitex seeks a dismissal of the complaint. It first contends that the Trustee failed to plead fraudulent concealment with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Second, Equitex argues that the Trustee failed to state a claim as to his breach of contract action.

As an alternative to dismissal, Equitex has requested that the Court stay this proceeding and compel the parties to resolve their dispute through arbitration.

---

**1.** Mr. Hays served as the Chapter 11 trustee in the main bankruptcy case prior to becoming the Liquidating Agent under the confirmed plan. For ease of reference, Mr. Hays will be referred to as the Trustee, rather than as the Liquidating Agent.

**2.** Smith, Gambrell & Russell, L.L.P., David J. Harris, P.C., and David J. Harris are also defendants in this action. They are not, however, parties to this Motion.

Paragraph six of the Consulting Agreement provides that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association...." (Consulting Agreement at ¶ 6). Equitex contends, based on the foregoing language, that the Trustee is contractually obligated to submit to arbitration. The Court will address the alternative issue raised, that being whether the dispute between the parties should be resolved through arbitration.

## CONCLUSIONS OF LAW

### I. The Federal Arbitration Act

■ Congress enacted the Federal Arbitration Act (hereinafter "FAA") in 1925 to "revers[e] centuries of judicial hostility to arbitration agreements[ ]" by "plac[ing] arbitration agreements 'upon the same footing as other contracts.'" *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (Blackmun, J., dissenting in part). Two provisions of the FAA are relevant to this case. Section 2 states that "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... **shall** be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1998) (emphasis added). This statute has been described as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (agreements to arbitrate should be rigorously enforced).

■ The second provision of the FAA applicable to this case is § 3, which provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1998). As stated by the Supreme Court, the rationale for imposing a stay in a proceeding pending arbitration is "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

### II. Legal Principles Applicable to the FAA

■ Three general principles regarding the applicability of the FAA have been embraced by the Supreme Court. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l,* 370 U.S. 254, 256, 82

S.Ct. 1346, 8 L.Ed.2d 474 (1962); *United Steel Workers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Second, due to the policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927. Indeed, the Supreme Court has advised that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steel Workers of Am.*, 363 U.S. at 582–83, 80 S.Ct. 1347; *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (same); *see also Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) ("when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration") (citation omitted); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987) (concluding that if the allegations "touch matters" covered by the parties' agreement, arbitration is appropriate) (citation omitted). Third, the party opposing arbitration bears the burden of demonstrating that Congress intended to except the claims at issue from coverage under the FAA. *McMahon*, 482 U.S. at 227, 107 S.Ct. 2332.

### III. Application of the Law to the Instant Case

#### A. Scope of the Arbitration Clause

 The Consulting Agreement is a simple contract. Equitex agreed to provide services to RDM for a fee. Section 2 of the FAA applies to commercial contracts. *See* 9 U.S.C. § 2 (1998). Para-

graph six of the Consulting Agreement provides that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration. . . ." (Consulting Agreement at ¶ 6). That RDM and Equitex intended to arbitrate contract disputes is quite clear. Inasmuch as RDM agreed to arbitrate contract disputes, the Trustee, as RDM's representative, is bound by that same agreement. *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir.1989). Hence, the Trustee's breach of contract claim falls squarely within the bounds of the Consulting Agreement's arbitration clause.

 Whether the Trustee is bound to arbitrate the breach of fiduciary duty and the civil conspiracy claims is not so obvious. The Trustee maintains that the breach of fiduciary duty and the civil conspiracy claims are not arbitrable controversies. He reasons that these two claims do not relate to or arise from the Consulting Agreement. Therefore, he urges the Court to conclude that these claims fall outside the scope of the arbitration clause.

As noted above, a party should not be forced to arbitrate a matter which it did not contractually agree to arbitrate. Notwithstanding that rule, any doubts regarding the scope of an arbitration clause should be resolved in favor of arbitration. Bearing these principles in mind, the Court will examine the Consulting Agreement and the causes the action. Understanding the nature of Equitex's relationship with RDM is crucial to this inquiry. Equitex agreed to perform "non-financial related management" services for RDM. (Consulting Agreement at ¶ 1). Equitex also agreed to advise and assist RDM in the areas of "management development, corporate planning, accounting, sales and marketing, employee benefits, technology management, personnel recruiting and

other areas of non-financial planning . . . ." (Id.). These two provisions, at least in the Court's view, are inconsistent. On the one hand, Equitex promised to perform "non-financial related" services. On the other hand, Equitex agreed to assist and advise RDM with respect to corporate planning, accounting, and sales. One would think that corporate planning, accounting, and sales necessarily fall in the "financial" camp of a business enterprise. The Addendum to the Consulting Agreement is instructive. It provides that

the Consulting Agreement references that certain services shall be provided by Equitex, Inc. to [RDM] with respect to management and general financial matters including but not limited to, changes in capital structure, reviewing and analyzing financial resources to implement [RDM's] strategic growth, long range business planning and sales and marketing matters for [RDM] . . . .

(Addendum to Consulting Agreement). It is important to this analysis that the Addendum makes specific reference to services that are unequivocally financial in nature, i.e., making changes in capital structure, analyzing financial resources, and implementing growth and long range business plans.

As previously mentioned, breach of fiduciary duty is the cause of action set forth in count two. Therein, the unmistakable theme is that Equitex breached its duty to RDM with respect to general financial matters. (Compl. at ¶¶ 113–129). According to the Trustee, the alleged breach applies to Equitex "[a]s a **financial advisor** and/or as a controlling shareholder of RDM . . . ." (Id. at ¶ 114) (emphasis added). The complaint is replete with allegations of financial mismanagement. Among other things, the Trustee has accused Equitex of (1) aiding or condoning the dissemination of false financial information and failing to

exercise oversight of the company's financial reporting; (2) failing to prevent RDM from consummating bad business transactions; (3) driving RDM to insolvency; (4) disposing of RDM's assets in an attempt to serve its own selfish interests; and (5) neglecting to develop a sound business plan. (Id. at ¶¶ 116–120, 123, and 124).

Although a breach of fiduciary duty claim is not specifically covered by the parties' arbitration agreement, RDM and Equitex did agree to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement." (Consulting Agreement at ¶ 6). There is a presumption in favor of arbitration when the parties employ broad, all-encompassing language. See AT & T Tech., Inc., 475 U.S. at 650, 106 S.Ct. 1415; Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir.1991). Two factors lead the Court to the conclusion that the fiduciary duty claim arises out of or relates to the Consulting Agreement. First, Equitex served RDM in the capacity of a financial advisor. Second, in the Trustee's own words, Equitex breached its duty as a financial advisor. There is a connection between the services performed under the Consulting Agreement and the acts complained of in count two, such that the Court is unable to find with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steel Workers of Am., 363 U.S. at 582–83, 80 S.Ct. 1347.

█ As with the breach of fiduciary duty claim, the Court must determine whether the conspiracy claim constitutes an arbitrable dispute. In count three, the Trustee contends that Equitex participated in a conspiracy that led to RDM's downfall. (Compl. at ¶¶ 130–146). Count three is predicated almost entirely on alleged

fiduciary duty breaches by all of the defendants, including Equitex. References to Equitex's alleged breaches are found in paragraphs 131, 132, 133, 134, 136, and 137. Given that the breach of fiduciary duty claim arises out of or relates to the Consulting Agreement, it is reasonable to conclude that the civil conspiracy claim against Equitex, which is premised on the very same alleged fiduciary breaches, likewise arises out of or relates to the Consulting Agreement. At a minimum, the civil conspiracy claim "touches" matters within the scope of the arbitration clause. *See Genesco, Inc.*, 815 F.2d at 846.

### B. Whether the Claims are Excepted from the FAA

All of the Trustee's claims fall within the scope of the Consulting Agreement. As such, the Court feels compelled to honor the arbitration clause, absent some compelling reason militating against arbitration. The Trustee, as the party opposing arbitration, bears the burden of showing that these claims should not be settled by arbitration. *McMahon*, 482 U.S. at 227, 107 S.Ct. 2332.

To this end, the Trustee argues that the Court should, in its discretion, exercise jurisdiction over his claims. Equitex is one of four defendants in this litigation. With respect to the four defendants, the Trustee contends that there are numerous common issues of law and fact. Equitex, however, is the only defendant that entered into a pre-petition arbitration agreement with RDM. The Trustee is concerned that bifurcating this action will threaten judicial economy and the expeditious resolution of this litigation.

In support of his position, the Trustee cites the Third Circuit's decision in *Zim-merman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir.1983). In *Zimmerman*, the trustee initiated a non-core contract action against Continental Airlines in bankruptcy court. 712 F.2d at 56. The Third Circuit refused Continental Airlines' request to require arbitration pursuant to the parties' pre-petition contract, reasoning that

[t]he dictates of the Arbitration Act, requiring stays of proceedings pending arbitration, could result in delays, expenses, and duplications similar to those previously experienced in bankruptcy proceedings because of the dichotomy between plenary and summary jurisdiction. Clearly a mandatory stay of a bankruptcy proceeding delays that proceeding. Also, since issues relating to the relationship between debtor and creditor might well be the subject of both the bankruptcy and the arbitration proceedings, duplication of adversarial effort, with a resulting increase in expense, would likely occur. Therefore, the policies underlying the expansion of bankruptcy court jurisdiction embodied in the Bankruptcy Reform Act may be relied on to resolve the conflict in the instant case.

\* \* \* \* \* \*

Bankruptcy proceedings, however, have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the

expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court.

*Id.* at 58–60 (internal citation omitted). The notion that bankruptcy judges have unfettered discretion to deny arbitration in non-core proceedings has found some favor with the courts. *See Cuvrell v. Mazur (In re F & T Contractors, Inc.),* 649 F.2d 1229 (6th Cir.1981); *In re Chas. P. Young, Co.,* 111 B.R. 410 (Bankr.S.D.N.Y.1990); *In re Guild Music Corp.,* 100 B.R. 624 (Bankr. D.R.I.1989); *Miller & Neill Co. v. Bauders (In re Miller & Neill Co.),* 41 B.R. 589 (Bankr.N.D.Ohio 1984); *Cross Elec. Co. v. John Driggs Co. (In re Cross Elec. Co.),* 9 B.R. 408 (Bankr.W.D.Va.1981).

Six years after *Zimmerman,* the Third Circuit had occasion to re-evaluate the role of arbitration in non-core bankruptcy proceedings. In *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* the trustee commenced a securities related action against Merrill Lynch in district court, and Merrill Lynch sought the enforcement of an arbitration agreement. 885 F.2d at 1150–51. Relying on *Zimmerman,* the district court denied the arbitration request on the ground that it had discretion to nullify the mandatory arbitration clause. *Id.* In reversing the lower court, the Third Circuit opined that

we can no longer subscribe to a hierarchy of congressional concerns that places the bankruptcy law in a position of superiority over [the Federal Arbitration] Act. The message we get from

these recent [Supreme Court] cases is that we must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives of the Code. Where, as here, a trustee seeks to enforce a claim inherited from the debtor in an adversary proceeding in a district court, we perceive no adverse effect on the underlying purposes of the Code from enforcing arbitration—certainly no adverse effect of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act as interpreted in the recent case law.

*Id.* at 1161. By acknowledging that the policy reasons underlying *Zimmerman* were "no longer applicable," *Hays* effectively overruled *Zimmerman. Id.* at 1160. Other courts, including the Fifth Circuit, have adopted the *Hays* rationale regarding the arbitrability of non-core claims. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgt. Corp. (Matter of Nat'l Gypsum Co.),* 118 F.3d 1056, 1066 (5th Cir.1997) ("With respect to derivative, non-core matters, the Third Circuit's opinion in *Hays* makes eminent sense.... Indeed, in this regard it has been universally accepted."); *In re Jotan, Inc.,* 232 B.R. 503, 507 (Bankr.M.D.Fla. 1999) (permitting the arbitration of claims which were not based on rights created by the Code); *Bezanson v. Consol. Constructors & Builders (In re P & G Drywall and Acoustical Corp.),* 156 B.R. 704 (Bankr. D.Me.1993); *Miller v. Dean Witter Reynolds, Inc.,* 134 B.R. 640, 641 (D.Minn.1991).

■■■ This Court prefers the *Hays* logic, as opposed to that articulated in *Zimmerman. Hays* simply stands for the

proposition that arbitration clauses should be enforced in non-core proceedings unless enforcement would clash with the objectives of the Bankruptcy Code. This Court does not read *Hays* to strip a court of all of its discretion. It is the responsibility of the bankruptcy court to determine the effect that arbitration will have on the underlying bankruptcy case. If the bankruptcy court concludes that enforcing an arbitration agreement will threaten the objectives or purposes of the Bankruptcy Code, the court has discretion to maintain jurisdiction over the case.

 Thus, in the present case, the Trustee can satisfy his burden of demonstrating that the claims against Equitex should not be arbitrated by showing that arbitration will conflict with the underlying purposes of the Bankruptcy Code. *See McMahon*, 482 U.S. at 227, 107 S.Ct. 2332; *Hays*, 885 F.2d at 1161. Other than his reliance on *Zimmerman*, the Trustee has made no attempt to establish such a conflict. Here, non-core claims are at stake. These claims could exist independently of this case, as they are not founded on substantive bankruptcy rights. It has not been shown that resolution of these non-bankruptcy claims in a non-bankruptcy forum will jeopardize the policies upon which the Bankruptcy Code was founded. Under the circumstances here presented, the Court can think of no legitimate reason which would justify a denial of enforcement of the arbitration clause. *See MCI Telecomms. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 200 (9th Cir. BAP 1994) (noting that there is nothing "either explicit or inherent in the Bankruptcy Code" excusing the arbitration of non-core claims).

Moreover, it is doubtful that resolution of these claims outside of the bankruptcy process will harm creditors. *Cf. F & T Contractors, Inc.*, 649 F.2d at 1232 (declining arbitration where determination "would affect the amount, existence and priority of claims to be paid out of the general funds and, thus, involve the interests of other creditors.") (citations omitted). It is likewise doubtful that arbitrating these claims will adversely impact the efficient and expeditious administration of this estate. In a few months, the Chapter 11 case will have been pending for four years. This particular lawsuit was commenced in August 2000. Given the status of other pending litigation, arbitration will not delay the administration of this case.

"[A]n arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20, 103 S.Ct. 927. That bifurcated proceedings might inconvenience the Trustee or cause other logistical problems is not determinative of this issue. In *Moses H. Cone Memorial Hospital*, the Supreme Court affirmed the lower court's decision requiring the enforcement of an arbitration agreement, despite the fact that an unfortunate side effect of arbitration was bifurcated proceedings. 460 U.S. at 19–20, 103 S.Ct. 927. Similarly, in *Dean Witter Reynolds, Inc.*, the Supreme Court stressed that "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." 470 U.S. at 221, 105 S.Ct. 1238; *see also Hays*, 885 F.2d at 1158 (even if arbitration might cause inefficient delay or duplicative proceedings, it must be shown that such problems are substantial enough to override the policy favoring arbitration).

Whatever concerns the Trustee may have about prosecuting similar claims in different forums are insufficient to negate enforcement of the arbitration clause.

### CONCLUSION

Having given this matter its careful consideration, the Court concludes that all of the Trustee's claims against Equitex are arbitrable controversies. Accordingly, Equitex's Motion is hereby **GRANTED**. As to Equitex, this adversary proceeding is stayed and the parties are compelled to initiate arbitration instanter.[3] In order for the Court to keep apprised of the progress of the arbitration proceeding, Equitex is directed to file a status report every ninety (90) days.

**IT IS SO ORDERED.**

---

**3.** It is unnecessary for the Court to consider the merits of Equitex's request for dismissal. Even if the Court were to find that the Trustee's complaint fails to satisfy the pleading requirements of Rules 8, 9(b), and 12(b)(6), it would not dismiss the action against Equitex. Instead, the Trustee would be afforded an opportunity to amend his complaint. *See Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991); *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985) ("a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted").