**In re John J. CAVANAUGH, Debtor.**

**John J. Cavanaugh, Plaintiff,**

**v.**

**Conseco Finance Servicing Corp., Conseco Bank, Inc., Green Tree Retail Services Bank, Inc. and Conseco, Inc., Defendants.**

**Bankruptcy No. 00–14263–JNF.
Adversary No. 01–1110.**

United States Bankruptcy Court,
D. Massachusetts.

Nov. 5, 2001.

---

Jeffrey Tillotson, Lynn Tillotson & Pinker, L.L.P., Dallas, TX, Warren E. Agin, Swiggart & Agin, LLC, Boston, MA, for plaintiff.

Lana S. Shiferman, Goodwin Procter LLP, Boston, MA, Thomas M. Hefferon, Goodwin Procter LLP, Boston, MA, for defendants.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the "Motion to Compel Arbitration and Dismiss

the Adversary Proceeding" (the "Motion") filed by Conseco Finance Servicing Corp., Conseco Bank, Inc., Green Tree Retail Services Bank, Inc., and Conseco, Inc. (collectively, the "Defendants"). The Debtor filed an Opposition to the Motion. The Court heard the matter on September 24, 2001 and took the Motion under advisement. The issue presented is whether the Debtor is required to arbitrate his bankruptcy law claims in accordance with the provisions of an arbitration agreement set forth in a note. Stated conversely, the issue is whether the enforcement of the arbitration agreement would deprive the Debtor of statutory rights and remedies under the Bankruptcy Code.

## II. PROCEDURAL BACKGROUND AND THE PLAINTIFF'S ALLEGATIONS

John J. Cavanaugh ("Cavanaugh" or the "Debtor") filed a petition under Chapter 13 on June 21, 2000. On Schedule A–Real Property, he listed a joint ownership interest in a condominium located at C2–7 Lydon Lane, Halifax, Massachusetts, which he valued at $100,000. On Schedule D–Creditors Holding Secured Claims, the Debtor listed three mortgagees with claims against the condominium: Source One Mortgage Corporation with a first mortgage in the sum of $87,000; "Conseco Finance" with a fully secured second mortgage in the sum of $12,000; and Household Finance Corporation with a third mortgage in the sum of $13,314.58.

On July 21, 2000, "CONSECO FINANCE (FORMERLY GREENTREE)" timely filed a proof of claim with respect to its "open end mortgage." On the proof of claim form, it indicated that on the date of the filing of the petition the Debtor owed it the principal sum of $11,218.33. It further indicated that the Debtor was current with his payments and thus owed no prepetition arrearages.[1] There was no mention of attorneys' fees on the proof of claim.

Although the Debtor's Schedules revealed that he had excess income with which to fund a Chapter 13 plan, the Debtor voluntarily converted his Chapter 13 case to a case under Chapter 7 on September 1, 2000, less than 10 weeks after filing his Chapter 13 petition. On November 17, 2000, the Chapter 7 Trustee filed a Report of No Distribution, and, on February 22, 2001, the Debtor received a discharge.

Approximately one week before the entry of the discharge order, on February 13, 2001, the Debtor, together with Debra A. Harrington ("Harrington"), filed an adversary proceeding against the Defendants. The Plaintiffs amended their Complaint as a matter of right on February 21, 2001. In their Amended Complaint, which the Plaintiffs described as a class action, the Plaintiffs sought "to remedy Defendants' pattern and practice of collecting and/or attempting to collect unreasonable and unapproved attorney's fees from debtors when such fees are hidden and are not approved by the bankruptcy court as reasonable and allowable under Section 506 of the Bankruptcy Code and Bankruptcy

---

1. In an Affidavit filed by Wanda Lamb–Lindow, Assistant Corporate Secretary of Conseco Finance Servicing Corp., she stated the following with respect to the proof of claim:

   The Proof of Claim which is at issue in that case was filed under the name of "Conseco Finance," and arises out of a mortgage loan made on May 18, 1998 by Lakeside Swimming Pool Company of Manville, Rhode Island. That loan was assigned on May 18, 1998 to Green Tree Financial Servicing Corporation. Conseco Finance Servicing Corp. is the successor by name change to Green Tree Financial Servicing Corporation.

   Ms. Lamb–Lindow subsequently attached a Note and Mortgage executed by the Debtor in favor of Conseco Bank, Inc.

Rule 2016(a)" and "to remedy Defendants' pattern and practice of collecting and/or attempting to collect debts that were discharged upon completion of debtors' Chapter 13 plans." The Plaintiffs alleged that this Court has jurisdiction under 28 U.S.C. §§ 157(b), 1331 and 1334, and 11 U.S.C. §§ 506, 362, 524, and 105 and that venue is proper under 28 U.S.C. §§ 1409 and 1391.

The Plaintiffs asserted a number of claims against the Defendants based upon facts which they summarized as follows: 1) Defendants have widespread bankruptcy involvement; 2) Defendants seek payment of attorneys' fees in violation of the Bankruptcy Code; and 3) Defendants purposefully violate the discharge injunction. Additionally, they made specific allegations with respect to themselves. As the Court previously granted the Defendants' Motion to Dismiss All Claims of Plaintiff Harrington without prejudice to either her right to reassert those claims in a court with proper venue or her right to become part of the so-called Hidden Fees Class described below, if and when such a class were to be certified by this Court, the Court need only discuss the specific allegations made against Conseco by Cavanaugh.

With respect to his specific claims, Cavanaugh alleged, upon information and belief, that the entity identified as "Conseco Finance" on the proof of claim filed in his bankruptcy case is Conseco Financing Servicing Corp. ("Conseco"). He further alleged that throughout his bankruptcy case, he "stayed current on his second mortgage account with Conseco." According to the Debtor, Conseco, nevertheless, continued to send him statements in violation of the automatic stay and demanded payments from him of approximately $404.78, a sum in excess of his normal monthly second mortgage payment of $250.39. The Debtor alleged that when he contacted Conseco, he learned from a "Bankruptcy Specialist" that the $155 charge was for attorneys' fees for preparing and filing the proof of claim in his bankruptcy and that he could " 'wait until the end of the loan' " to pay the attorneys' fee charge. He alleged that he eventually paid the extra amount.[2]

---

2. The Debtor attached several exhibits to his Complaint. In particular, he attached a letter, dated August 22, 2000, from Merrill Brimley, Bankruptcy Specialist. Although the letterhead on the letter provided "**Company Name Here**," the address was given as "7630 S. Kyrene Road Tempe, AZ 85283." In the letter, Brimley stated the following:

I am writing you this letter following your request. Your monthly payments are $250.39 and are due on the first of each month. Your next payment is due on September 1st. You have requested to receive your monthly statements from our company. On those statements it has a Total Due column and indicates you owe $405.39. This dollar amount is figured using September's payment plus an attorney's fee of $155.00. While you are in the bankruptcy, your only concern is continuing to make regular payments just as you have done through the loan's history. In no way does the $155.00 fee cause your account to go delinquent or cause you to incur more interest. Unfortunately, we are unable to move that fee off the billing statement.
Exhibit D to Amended Complaint. Cavanaugh also attached three "Monthly Informational Statements" dated November 1, 2000, December 1, 2000 and February 1, 2001, to his Amended Complaint. These statements contained a Remittance Address for Conseco Finance, Dept. 0099, Palatine, IL 60055–0099, although they also contained a puzzling reference to the Tempe AZ 85283 address immediately following the Debtor's Massachusetts address. Both the Statement and the Remittance Coupon contained the following language:

THIS IS NOT A BILL. THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY. If you were an obligor on this account prior to the filing of a Chapter 7 bankruptcy, and you have received a discharge, and if the debt was not reaffirmed in the bankruptcy case, Conseco Finance is exercising only its rights under the security agreement as allowed by law. Conseco Finance is not attempting any act

In the Amended Complaint, the Debtor alleged that the Defendants' conduct toward him was not unique. Accordingly, he stated that "[b]ecause their [the Defendants'] conduct is widespread and uniform, this case is appropriately therefore brought as a class action...." [3] Amended Complaint at ¶ 64.

The Debtor stated the following causes of action in the Amended Complaint: Count I: Disallowance and Reimbursement of Attorneys' Fees for Failure to Meet the Requirements of Section 506(b) of the [Bankruptcy] Code; Count II: Disallowance and Reimbursement of Attorneys' Fees for Failure to Obtain Court Approval for Such Fees Pursuant to Section 506(b) and Bankruptcy Rule 2016(a); Count III: Willful Violations of the Automatic Stay Provision of 11 U.S.C. § 362; Count V: Contempt of Court for Willful Violations of the Provisions of 11 U.S.C. §§ 506, 362, and 524 pursuant to 11 U.S.C. § 105 and Request for Relief under § 105 as Appropriate; Count VI: Declaratory Relief; Count VII: Request for Injunctive Relief; and Count VIII: Attorneys' Fees. Cavanaugh brought the first three counts against all Defendants on behalf of himself and the Hidden Fees Class. He also brought Counts V through VII against all Defendants on behalf of himself and the Hidden Fees Class, as well as the class that Harrington purported to represent. The remaining count, Count IV: Willful Violation of the Discharge Injunction Provisions of 11 U.S.C. § 524, pertained to Harrington's claims, only. Cavanaugh also prayed for compensatory and/or punitive damages for the Defendants' alleged illegal collection of attorneys' fees.

The Defendants filed an Answer to the Plaintiffs' Complaint in which they responded to Cavanaugh's allegations only. Additionally, they asserted 13 Affirmative Defenses and filed several affidavits. Following disposition of the Motion to Dismiss All Claims of Plaintiff Harrington, the Defendants filed the instant Motion to Compel Arbitration together with the Affidavit of Wanda Lamb–Lindow ("Lamb–Lindow"), the Assistant Corporate Secretary of Conseco Finance Servicing Corp. In her Amended Affidavit filed in conjunction with the Motion to Compel Arbitration, Lamb–Lindow indicated that Conseco Finance Servicing Corp. is a Delaware corpo-

---

to collect or recover the discharged debt as your personal liability. If the above amount is not received by the stated date, Conseco Finance may exercise its right to seek possession of the collateral.
Exhibit B to Amended Complaint. The Remittance Coupons contained a statement that the total due was $404.78, as well as a statement to "Please make all checks payable to Conseco Finance." *Id.*

3. Cavanaugh has filed a motion seeking class certification. He described the class as follows:

*"Hidden Fees Class."* All individuals who have filed a bankruptcy petition and against whom Defendants have claimed as part of the amount due it [sic] pursuant to a consumer loan a bankruptcy fee, bankruptcy attorneys' fee, attorneys' fee or any other fee or charge, whether collected or not, which is assessed, directly or indirectly, after the filing of a bankruptcy petition, including those for which Defendant [sic] has filed a proof of claim, and which would not have been claimed absent the bankruptcy, including but not limited to any fee or charge for preparing or filing a proof of claim or reaffirmation agreement. The terms "bankruptcy fee," "bankruptcy attorneys' fee," "attorneys' fee" and "any other fee or charge" do not include any attorneys' fee or reimbursement of costs for which Defendant has made specific application and/or motion (not a proof of claim or reaffirmation agreement) to a United States Bankruptcy Court and for which a specific order of a United States Bankruptcy Court approving or denying said fees has been entered.
Amended Complaint at ¶ 65.

ration with a principal place of business in Minnesota; that Conseco Bank, Inc. is a Utah Corporation with a principal place of business in Utah; and that Conseco, Inc. is an Indiana corporation with its principal place of business in Indiana. She further stated that "[f]unds to make the mortgage loan to Mr. John J. Cavanaugh originated from outside of Massachusetts," and that "Mr. Cavanaugh made payment on this loan to CFSC [Conseco] in Palantine, Illinois." She also stated that "[t]he loan was serviced out of CFSC's Tempe, Arizona location" and that "[n]o servicing or collection activity originated from Massachusetts, and, specifically, CFSC's monthly invoices were not sent from Massachusetts." She attached a copy of the Note and Mortgage signed by Cavanaugh to her Affidavit.

The Open–End Mortgage, which was executed by the Debtor in favor of Conseco Bank, Inc.,[4] contains the following pertinent language:

EXPENSES; ADVANCES ON COVENANTS; ATTORNEY'S FEES; COLLECTION COSTS. Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in the Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving, or otherwise protecting the Property and Lender's security interest.... Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees, court costs, and other legal expenses....

The Note, which the Debtor executed with the Mortgage, contains the following pertinent provisions:

COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). *To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.*

(Emphasis supplied).

ARBITRATION: All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by you with consent of us. This arbitration contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES

---

4. A stamp appears on the top of the first page of the mortgage with the name and address of Green Tree Financial Servicing Corporation. Because both the Note and Mortgage name Conseco Bank, Inc. as the lender, this Court is unable to verify, based upon the exhibits attached to the Amended Complaint and Affidavits, that the original loan was made by Lakeside Swimming Pool Company.

VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU. (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under the case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a mortgage, deed of trust, or other security agreement relating to the real property secured in a transaction underlying this arbitration agreement, or to enforce the monetary obligation secured by the real property, or to foreclose on the real property. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the mortgage or deed of trust, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in the contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

(Emphasis in original).

## III. POSITIONS OF THE PARTIES

### A. *The Defendants*

Noting that "[t]he factual crux of Cavanaugh's claim is that he should not have been charged the post-petition attorneys' fees paid by CFSC to protect its rights in the secured property, and it should not have appeared on the monthly statement." Defendants' Memorandum of Law in Support of Their Motion to Compel Arbitration and Dismiss Adversary Proceeding at p. 9. The Defendants maintain that the issue before the Court is a simple one: "whether or not CFSC was permitted to make such a charge under the Note and to list such on its invoices." *Id.* They argue 1) that Cavanaugh's claims fit within the broad scope of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16;[5] 2) that federal policy strongly favors arbitration of disputes, citing, inter alia, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), and *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); 3) that courts considering arbitration clauses similar or identical to the clause appearing in the Debtor's contract with Conseco have compelled arbitration of the borrowers' claims, whether under federal or state statutes or common law theories; 4) that arbitration should not yield to the bankruptcy court forum unless "there is a demonstrated specific conflict between enforcement of the arbi-

---

**5.** The FAA provides in pertinent part:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

tration clause and the textural provisions or purposes of the Bankruptcy Code," Defendants' Memorandum at p. 10; 5) that Cavanaugh cannot make the required showing that the issues to be arbitrated implicate a substantive right created in the Bankruptcy Code or that allowing the case to be arbitrated would conflict with any underlying purpose of the Bankruptcy Code, particularly as Cavanaugh's claims cannot affect the administration of his bankruptcy case; and 6) that this Court should order arbitration and dismiss the adversary proceeding rather than stay further proceedings.

### B. *Cavanaugh*

Cavanaugh posits the substantive issue in this adversary proceeding as follows: "whether the Defendants violated bankruptcy law by surreptitiously trying to charge Plaintiff and other class members attorney's fees." Plaintiff's Response in Opposition to Defendants' Motion to Compel Arbitration at p. 8. He argues that his right to assert his claim "arises not from the parties' contract but from the protections provided by the Bankruptcy Code and from the inherent powers of the Court." *Id.* Additionally, he states that this Court should deny the Motion because 1) only one of the Defendants has an arbitration agreement with him; 2) this Court has absolute discretion not to compel arbitration because the issues on which arbitration are sought are "core;" and 3) the Defendants have waived or are otherwise estopped from asserting arbitration because they have litigated this case and invoked the judicial process before filing their Motion.[6]

## IV. DISCUSSION

■■■ The Debtor has the burden of establishing that his claims should not be arbitrated. *See Shearson/Amer. Exp., Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). To meet that burden, he must satisfy the test recently articulated by the Supreme Court in *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

> In determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.

*Id.* at 90, 121 S.Ct. 513.

■■■ The purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Randolph*, 531 U.S. at 89, 121 S.Ct. 513. *See also New England Energy Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 4 (1st Cir.1988). The Supreme Court has "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,'" *Randolph*, 531 U.S. at 89–90, 121 S.Ct. 513. Accordingly, the Supreme Court has held that federal statutory claims under securities laws, *see Rodriguez de Quijas v. Shearson/Amer. Exp., Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); antitrust laws, *see*

---

**6.** At the hearing on September 24, 2001, the Debtor also argued that discovery about the arbitration process was necessary to determine whether the clause at issue, a clause virtually identical to the clause in *Randolph*, is unconscionable. At the hearing, counsel to the Defendants undercut that argument by representing on the record that the Defendants would pay the cost of arbitration and, in the event of a dispute over the selection of an arbitrator, permit this Court to resolve the selection.

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); consumer protection laws, *see Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); anti-discrimination laws, *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), and civil RICO claims, *see Shearson/Amer. Exp., Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), are subject to arbitration. Consistent with the Supreme Court's decisions, the majority of courts has ruled that claims under the Truth–in–Lending Act, 15 U.S.C. § 1601 *et seq.*, are arbitrable, even when brought by a purported class of plaintiffs. *See, e.g., Johnson v. West Suburban Bank*, 225 F.3d 366 (3d Cir.2000); *Gray v. Conseco, Inc.*, 2000 WL 1480273 (C.D.Cal. Sept.29, 2000). *Cf. New England Energy Inc. v. Keystone Shipping Co.*, 855 F.2d 1 (1st Cir.1988). Additionally, an arbitration agreement may be enforced notwithstanding the presence of other persons or entities who are parties to the underlying dispute but not to the arbitration agreement. *See In re RDM Sports Group, Inc.*, 260 B.R. 905, 914 (Bankr.N.D.Ga.2001)(citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

Turning to the two-part test set forth in *Randolph*, 531 U.S. at 90, 121 S.Ct. 513, the first question is whether the parties agreed to submit the Debtor's claims to arbitration. While the answer at first blush seems clear, as the Debtor signed the Note containing the arbitration provision, the Note also contains a reference to attorney's fees that may be permitted under the Bankruptcy Code and awarded "by any court exercising jurisdiction." Thus, a dispute over attorneys' fees may not, as argued by Conseco, fit squarely within the arbitration provision of the Note as a dis-

pute arising from the contract between the parties, as Conseco Bank, Inc., the drafter of the Note and Mortgage, contemplated a circumstance where the Bankruptcy Court would determine attorneys' fees.

■ The answer to the second question is more complex. In Count III of his Amended Complaint, the Debtor set forth a cause of action for a willful violation of the automatic stay for, among other things, "collecting attorneys' fees from the debtors during the pendency of the automatic stay...." The Debtor also set forth causes of action for contempt of court for willful violations of the provisions of 11 U.S.C. §§ 506 and 362 (Count V), declaratory relief that collecting attorneys' fees for filing proofs of claim without obtaining prior court approval violates the automatic stay (Count VI), and injunctive relief to stop such conduct (Count VII).

In *In re Soares*, 107 F.3d 969 (1st Cir. 1997), the United States Court of Appeals for the First Circuit held that the action of a state court in ordering a default and directing the entry of a judgment against a Chapter 13 debtor with respect to a prepetition foreclosure action was not ministerial and, thus, was void as a violation of the automatic stay. In so holding, the court stated that "[t]he automatic stay is among the most basic of debtor protections under bankruptcy law." 107 F.3d at 975. It also observed that the automatic stay "remains in force until a federal court either disposes of the case, *see* 11 U.S.C. § 362(c), or lifts the stay, *see id.* § 363(d)–(f)." *Id.* Additionally, it directed that "courts must display a certain rigor in reaction to violations of the automatic stay" to ensure the important protections it affords. *Id.*

In another important case addressing the parameters of the automatic stay, the United States Court of Appeals for the Ninth Circuit, in *In re Gruntz*, 202 F.3d

1074 (9th Cir.2000), determined that the Rooker–Feldman doctrine neither bound federal courts nor stripped them of jurisdiction with respect to state court modifications of the automatic stay. It stated that

> [B ]ankruptcy courts have the ultimate authority to determine the scope of the automatic stay imposed by 11 U.S.C. § 362(a), subject to federal appellate review. A state court does not have the power to modify or dissolve the automatic stay. Accordingly, the Rooker–Feldman doctrine does not render a state court judgment modifying the automatic stay binding on a bankruptcy court.

Id. at 1078 (emphasis supplied). In beginning its discussion, the Ninth Circuit observed that

> Congress's plenary power over bankruptcy derives from the constitutional imperative "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, § 8. "The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit that jurisdiction which courts, State or Federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law." In furtherance of this charge, jurisdiction and authority over bankruptcies has been vested, from the beginning of the Republic, in the federal district courts. See, e.g., Bankruptcy Act of 1800, § 2, 2 Stat. 19, 21; Bankruptcy Act of 1841, § 6, 5 Stat. 440, 445; Bankruptcy Act of 1867, § 1, 14 Stat. 517, 517; Bankruptcy Act of 1898, § 2, 30 Stat. 544, 545.

Id. at 1080 (case cites omitted). The court then examined the bankruptcy court's jurisdiction, distinguishing between "core" and "non-core" proceedings. The Ninth Circuit opined that the automatic stay imposed by § 362(a) is "[c]entral to the bankruptcy 'case,' " and that Congress has declared that action to " 'terminate, annul, or modify' the automatic stay are core bankruptcy proceedings." Id. at 1081 (citing 28 U.S.C. § 157(b)(2)(G)). It added the following:

> The automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts. That is so not only because of the "comprehensive jurisdiction" vested in the bankruptcy courts, but also because " 'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.' " In this case, as in most bankruptcy cases, the bankruptcy court notified the creditors, including the complaining witness in the criminal proceedings, of the applicability of the stay.

> Any state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay. "While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances," such as the automatic stay, "it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in personam actions." Although Donovan [Donovan v. City of Dallas, 377 U.S. 408, 412–13, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) ] discussed this rule as applied to in personam actions, its holding applies even more strongly to federal in rem proceedings under the Bankruptcy Code, in

which a "federal court having custody of such property has exclusive jurisdiction to proceed."

\*   \*   \*   \*   \*   \*

[E]ven assuming that the states had concurrent jurisdiction, their judgment would have to defer to the plenary power vested in the federal courts over bankruptcy proceedings. Indeed, that was precisely the issue in *Kalb,* [*Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) ] in which the state was proceeding within its jurisdictional powers as to the subject matter, but in derogation of the federal bankruptcy stay. "A Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant."

In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay. "The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land." *Id.* at 1082–83 (citations omitted, footnotes omitted).

▉▉▉ This Court's finds that the Ninth Circuit's analysis to be germane to the present issue. In the first place, Congress's power over bankruptcy is derived directly from Article I, § 8 of the Constitution, unlike its power pursuant to, for example, the commerce clause to enact legislation regulating the sale of securities or consumer lending practices, which laws were addressed by the Supreme Court in cases such as *McMahon* and *Randolph.* Moreover, as the First Circuit in *Soares* implicitly recognized, the automatic stay is the single most important protection af-

forded to debtors by the Bankruptcy Code. Additionally, the automatic stay is "an injunction issuing from the authority of the bankruptcy court." *Gruntz,* 202 F.3d at 1081. Accordingly, this Court should determine whether that injunction was violated and protect it from collateral attack from another forum. And, finally, the Debtor's causes of action with respect to the alleged stay violation are core proceedings as they arise under title 11. *See* 28 U.S.C. § 157(b). To paraphrase the United States Court of Appeals for the Fifth Circuit in *In re National Gypsum Co.,* 118 F.3d 1056 (5th Cir.1997), the Debtor's action for damages for willful violation of the automatic stay and to construe the scope of the stay with respect to attorneys' fees charged for filling a proof of claim (and by extension in seeking to enforce a lien) "need not, *indeed cannot,* resolve any state law contract issues...." 118 F.3d at 1064. (emphasis in original, footnote omitted). In short, the Court finds that the Debtor is asserting, through his Amended Complaint, a federal claim arising from a statutory right under the Bankruptcy Code, not a simple breach of contract claim.

In *National Gypsum,* the Fifth Circuit analyzed applicable provisions of the FAA and Supreme Court and circuit court decisions addressing its applicability, including *Shearson/Amer. Exp., Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Rodriguez de Quijas v. Shearson/Amer. Exp., Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); and *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir.1989). Citing with approval the test articulated by the court in *In re Statewide Realty Co.,* 159 B.R. 719, 724 (Bankr. D.N.J.1993),[7] the Fifth Circuit rejected a

---

7. In *Statewide,* the court set forth the following standard:

The fact that the matter before the court is a core proceeding does not mean that arbi-

bright line rule that would require arbitration only with respect to non-core proceedings. It observed that

> The core/non-core distinction conflates the inquiry set forth in *McMahon* and *Rodriguez* with the mere identification of the jurisdictional basis of a particular bankruptcy proceeding. Certainly not all core bankruptcy proceedings are premised on provisions of the Code that "inherently conflict" with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code.

*National Gypsum*, 118 F.3d at 1067. Thus, the court refused "to find such an inherent conflict based solely on the jurisdictional nature of a bankruptcy proceeding." *Id.* It stated:

> [W]e believe that nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code. In this regard, ... the discretion enjoyed by a bankruptcy court to refuse enforcement of an otherwise applicable arbitration provision depends upon a finding that the standard set forth in *McMahon* has been met.

Id. at 1067. It added the following:

> [D]istinguishing between those actions derived from the debtor and those created by the Bankruptcy Code explains the

consistent reluctance to permit arbitration of actions brought to adjudicate bankruptcy rights. There can be little dispute that *where a core proceeding involves adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims, the importance of the federal bankruptcy forum provided by the Code is at its zenith.* Arguably, these actions are simply beyond the coverage of most, if not all, arbitration provisions. But, assuming an otherwise applicable arbitration provision, the adjudication of these actions outside the federal bankruptcy forum could in many instances present the type of conflict with the purpose and provisions of the Bankruptcy Code alluded to in *McMahon.*

We think that, at least where the cause of action at issue is not derivative of the pre-petition legal or equitable rights possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code, a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.

*Id.* at 1068–69 (emphasis supplied).

The Court finds that the Debtor has met his burden of satisfying the test articulated

---

tration is inappropriate. The description of a matter as a core proceeding simply means that the bankruptcy court has the jurisdiction to make a full adjudication. However, merely because the court has the authority to render a decision does not mean it should do so. The discussion in *Hays* regarding core and non-core proceedings is not read by this court as suggesting that core proceedings may not be subject to

arbitration. Rather it appears that the *Hays* court sought to distinguish between actions derived from the debtor, and therefore subject to the arbitration agreement, and bankruptcy actions in essence created by the Bankruptcy Code for the benefit ultimately of creditors of the estate, and therefore not encompassed by the arbitration agreement.

159 B.R. at 724.

426

by the United States Supreme Court in *Randolph,* a test consistent with the principles previously articulated by the Court in *McMahon.* This Court rejects the manner in which Conseco has framed the issue. Unquestionably, the Note and Mortgage executed by the Debtor provided for attorneys' fees in the event of default and protected and preserved Conseco's security interest. Additionally, there can be no question that a dispute exists as to whether Conseco was entitled to bill Cavanaugh for attorneys' fees. Couching the issue in this manner, however, while facilitating the argument that the dispute should be resolved by arbitration, ignores the Debtor's assertion that Conseco, in billing him for those attorney's fees, violated the automatic stay that was in effect at the time. In other words, the Debtor's claims are not derivative of any prepetition legal or equitable rights; they arose solely because of title 11. There is no evidence, nor could there be, that the Debtor agreed to arbitrate disputes "arising under title 11," as opposed to "disputes, claims or controversies arising from or relating to this contract." *See* Note at pp. 9–10, *supra.* Moreover, the Note specifically stated that the Debtor agreed to pay only those reasonable attorneys' fees permitted by the United States Bankruptcy Code "as awarded by any court exercising jurisdiction under the Bankruptcy Code." Conseco has not argued, and it would be absurd to do so, that an arbitrator is a court with jurisdiction under the Bankruptcy Code to award fees that Conseco has allegedly billed and collected.

In pursing his Complaint, the Debtor is seeking to redress an alleged abuse of the bankruptcy system. Arbitration is not a proper forum for adjudication of a dispute over whether the Defendants violated the fundamental protection of the automatic stay. Enforcement of the arbitration clause under these circumstances would be an abrogation of this Court's obligation to construe and enforce the injunction issuing under its authority and to determine the parties' rights and obligations under bankruptcy law.

## V. CONCLUSION

In view of the foregoing, and having found that Congress has evinced an intention to preclude a waiver of a remedies under 11 U.S.C. § 362 for violations of the automatic stay, the Court shall enter an order denying Conseco's Motion to Compel Arbitration and Dismiss the Adversary Proceeding.